The special committee to whom was referred the petition of Robert Howard, that the seat now occupied by Joseph O. Neill as senator of the second Bristol senatorial district may be given to him, having considered the same, submit the following report: —
Mr. Howard and Mr. Neill both appeared before the committee and produced evidence, but were unattended by counsel.
Mr. Howard alleged, as set forth in his petition (a copy of which is hereto annexed), that by the official return of the election of senator in the second Bristol senatorial district, certain votes were cast for Robert Howrad for senator; that these votes, though not so counted in the return, were intended for and should be counted for himself; that, if the votes be so counted, he will have a plurality of the votes cast for senator; and that he is *20 entitled to the seat, instead of Mr. Neill, who received the certificate of election.
Mr. Neill denied Mr. Howard’s claim to the seat, and in answer to the petitioner contended —
(1.) That the votes for Robert Howrad for senator were not intended and should not be counted for Robert Howard.
In case, however, the votes for Robert Howrad should be counted for Robert Howard, and the result thus give Mr. Howard an apparent plurality, Mr. Neill further claimed —
(2.) That an investigation should be had of certain challenged ballots containing the name of Robert Howard for senator, which had been illegally received in the city of Fall River, and which should be rejected, the number of challenged ballots so illegally received being greater than the apparent plurality given Mr. Howard by counting for him the Howrad votes.
(3.) That a recount should be made of the votes for senator in Fall River, inasmuch as errors had been made by the aldermen in their recount of the votes for senator in that city, and as the votes of that city, if correctly counted, would still give him (Mr. Neill) a plurality of votes in the district over Mr. Howard.
(4.) That the votes cast for senator in ward three in Fall River, which gave Mr. Howard a plurality of over five hundred votes, should be thrown out, inasmuch as there was a large number of persons, qualified voters in that ward, who were absent in New York during the day of election, but whose names were checked upon the voting lists as having been voted upon.
First. The first question was in regard to the votes cast for Robert Ilowrad. The committee found that by the official return for senator in the second Bristol district, —
Joseph O. Neill of Fall River received votes, CO CO
Robert Howard of Fall River received votes, (M
Robert I-Iowrad of Fall River received votes, O O
Herbert A. Skinner of Fall River received votes, . N W
Thus giving Joseph 0. Neill a plurality of twenty-one votes over Robert Howard. If, however, the votes for Robert Ilowrad were counted for Robert Howard, Mr. Howard would have a plurality of thirty-nine votes over Mr. Neill.
It appeared that Mr. Burgess, one of the Republican candidates for representative in Fall River, gave a verbal order to Patrick Delaney of the. firm of Delaney, Dillon & Co., printers of the regular Democratic ticket, for a split ticket, so called, which should contain the names of all the regular Democratic nominees, except that Mr. Burgess’s name should be substituted for that of *21 one of the Democratic candidates for representative. The tickets were printed hastily, on the Saturday evening preceding the election, and the name of Robert Howrad for senator was by mistake inserted for that of Robert Howard, the letters “ ar” having been inadvertently transposed by the compositor. The proof was read only by Mr. Delaney, who failed to discover the mistake. Mr. Burgess received one of the ballots before the day of election, but failed, he said, to notice the mistake. The remainder of the ballots were delivered to Mr. Burgess on election day, shortly before nine o’clock, the hour of opening the polls, and he hired persons to distribute them in his interest at six of the Fall River precincts. The mistake was not generally discovered until about ten o’clock in the forenoon, at which time Mr. Burgess says the error was first called to his notice. He immediately caused the ballots to be withdrawn from his distributors, and took them back to the printer, who declared that it was an unintentional error and oversight, and refunded, the money paid for them. No evidence was offered to show that any other ballots were cast containing the name of Howrad than those so printed by Delaney. It was shown that there was no known candidate for senator in that district by the name of Robert Howrad ; that the name of Howrad was not to be found in the directory or on the voting list of Fall River; and the mayor, the city clerk and other citizens who came before the committee did not know of any person by the name of Howrad living in Fall River. There was no evidence to satisfy the committee that the ballots cast for Robert Howrad were intended as votes for any other than Robert Howard.
The committee believe that the nature of the error and the accompanying circumstances were such as to justify the conclusion that those voters who cast ballots containing the name of Robert Howrad for senator intended to vote for Robert Howard ; and, in order that the will of the electors shall not be defeated, that the votes for Robert Howrad should be counted for Robert Howard. Under similar circumstances, in preceding eases, votes for Edwin Waldron hare been counted for Edwin Walden ; votes for Solomon D. Hood, for Salmon D. Hood; votes for George Bartholomesz, for George Bartholmesz; and votes for Thomas T. Wright have been counted for Joseph T. Wright. McGibbons v. Walden, House, 1877, Loring & Russell’s Election Cases, 289; Hood v. Potter, House, 1875, Ib., 217; Hobbs v. Bartholmesz, House, 1872, Ib., 182; Wright v. Hooper, House, 1865, Ib., 100. *
*22 Second. The committee next considered the challenged ballots. They ascertained that ballots cast in Fall River, both for Mr. Howard and Mr. Neill, were challenged on various grounds, the larger number challenged being for Mr. Howard. They found, however, that the number of those for Mr. Howard which were challenged was less than thirty-nine, — that is, less than the plurality given Mr. Howard after counting for him the Howrad votes; so that, should they, after receiving evidence regarding each challenged ballot, decide to throw out all those for Mr. Howard and retain all those for Mr. Neill, Mr. Howard would still have a plurality of votes. Further, Mr. Neill informed the committee at this period of their inquiry that he should offer no further evidence. The committee, therefore, decided that they were not called upon to make further investigation as to the challenged ballots.
Third. In asking a recount by the committee of the votes for senator in Fall River, Mr. Neill disclaimed any charge of fraud in connection with the recount by the aldermen, on which the official return was based. He stated, as the reason why he asked that such recount should be made by the committee, that the aldermen had made their recount hastily, and that there were great differences between the first count of the votes, as made by the ward officers, and the subsequent recount made by the aldermen.
The committee found that in making the recount the eight aldermen began by each counting all the votes for senator, but that after thus counting a few precincts they were divided into sub-committees, containing members of both parties, and a portion of the ballots were assigned to each sub-committee to count; that all the members of each sub-committee counted all the ballots so assigned to their own sub-committee ; that the number of ballots cast in Fall River was nearly eighty-one hundred; and that between four and five hours were occupied in the recount.
*23 There were but two considerable variances between the first count by the ward officers and the recount by the aldermen. In ward four, precinct B, in the recount Mr. Neill lost seven votes and Mr. Howard gained forty, a gain of forty-seven votes for Mr. Howard. In ward five, precinct A, Mr. Neill gained fourteen votes and Mr. Howard lost fourteen votes, a gain for Mr. Neill of twenty-eight votes. There were other slight variances by which both candidates gained and lost, but Mr. Howard received a plurality of the votes on the first count by the ward officers as well as in the recount by the aldermen, if the Howrad votes be counted for him.
Both Mr. Neill and Mr. Howard were present at the recount, and neither made any objection to the proceedings, but both apparently acquiesced in them.
The provisions of the Massachusetts statutes are liberal in granting a recount of the votes cast at an election, after they have been once counted and the result declared by the ward or town officers. The verification of the votes made by a recount, so provided by law, should not be further questioned by a legislative body in the exercise of its power as a final judge of the election and qualifications of its own members unless there are substantial and strong reasons for believing there was fraud or error in the recount, which would change the result.
The committee are satisfied from the evidence that the recount in this case was not hastily or improperly made by the aldermen. There were variations between the first count and the recount made by the aldermen; but the mere fact of such variations existing to the extent named, unaccompanied by any charge of fraud, or more specific reasons for believing that errors had been made 'by the aldermen sufficient to change the result, would not, the committee believe, justify them in making a second recount.
The committee seem to be sustained in this conclusion by the cases of Rice v. Welch, Senate and House, 1868, Loring & Russell’s Election Cases, 128; O’Connor v. Locke, House, 1878, Ib., 310; MacMahan v. McGeough, House, 1883, Ib., 370; Collins v. Cogswell, Senate, 1885, Ib., 390.
The adoption of a contrary principle would seem to invite candidates to apply for a recount whenever defeated by a small plurality, on account of the possibility of error which always exists ; would entail in the future long and tedious labors on the part of members of the Legislature; and would be opposed to public policy.
Fourth. Upon the contention of Mr. Neill that the votes of ward three should be thrown out, because the names of certain *24 legal voters in that ward were cheeked upon the voting list as having been voted upon when, in fact, these voters were absent from the city during the day of election, the committee held to the rule laid down in the case of Barr et al., petitioners, in 1876. (Loring & Russell’s Election Cases, 254.) The rule as there stated is, that the official return of votes, being prima facie correct, cannot be set aside by proof that votes were cast by persons not entitled to vote, unless it is also shown that the ward officers in receiving such votes acted dishonestly or collusively, or unless it is proved that such votes were cast for the successful candidate, and that the rejection of such votes would change the result. This principle is supported by the decisions of the supreme judicial court. (See cases cited in note to Barr et al., supra.) Under this rule it was necessary for Mr. Neill to prove not only that the names of the absent voters were voted upon by others illegally, but also that persons so illegally voting, in number at least equal to Mr. Howard’s ascertained plurality, voted for Mr. Howard. Mr. Neill informed the committee that he should not offer testimony upon this point beyond the single witness who, while the committee was considering the earlier questions in the controversy, had offered evidence tending to show one such illegal vote for Mr. Howard. The committee consequently did not proceed further upon this request of Mr. Neill.
[The resolution declared that the petitioner was duly elected senator and entitled to the seat.' The resolution was adopted.— Senate Journal, 1889, p. 77. Mr. Howard qualified and took the seat. —Ib., p. 169.]
For the reasons above set forth the committee are of the opinion that Mr. Howard was elected senator in the second Bristol district, and is entitled to the seat which he claims in his petition, and they recommend the passage of the accompanying resolution.